# Northbrook Insurance Company
Northbrook, Illinois

**FACULTATIVE CASUALTY REINSURANCE CERTIFICATE** **STOCK COMPAN**

CERTIFICATE NO.: 63 -300-091
Renewal of: NEW
Reinsured's Identification: 1-0607
Producer's Identification:

Northbrook Insurance Company (herein called the Company), does hereby reinsure:

1. **Name of Reinsured** UNIGARD MUTUAL INSURANCE COMPANY
(herein called the Reinsured) in respect of the Reinsured's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, as follows:

2. **Address of Reinsured** C/O ALLEN, MILLER AND ASSOCIATES, INC., 450 SANSOME STREET, SUITE 70C SAN FRANCISCO, CALIFORNIA 94111

3. **Name of Insured** OCCIDENTAL PETROLEUM CORPORATION

**Address** 10889 WILSHIRE BLVD., LOS ANGELES, CALIFORNIA 90024

**Policy Period:** From MARCH 1, 1973 To MARCH 1, 1976

4. **Period of this Certificate:** From MARCH 1, 1975 To MARCH 1, 1976

5. **Schedule of Reinsurance Afforded**

| | |
|---|---|
| Section I TYPE OF INSURANCE | UMBRELLA LIABILITY |
| Section II POLICY LIMITS AND APPLICATION | 1.) $2,500,000 PART OF $4,000,000 EXCESS OF $1,000,000<br>2.) $13,000,000 PART OF $25,000,000 EXCESS OF $25,000,000 |
| Section III REINSURED'S RETENTION | SUBJECT TO FACULTATIVE REINSURANCE |
| Section IV REINSURANCE ACCEPTED | 1.) $1,450,000 PART OF $4,000,000 EXCESS OF $1,000,000<br>2.) $1,000,000 PART OF $25,000,000 EXCESS OF $25,000,000 |

6. **Reinsurance Premium Computation**

Deposit Premium $ 30,935.00 Minimum Premium $ 5,000.00 Audit Period N/A

IN WITNESS WHEREOF, the Company has caused this Certificate to be signed by its Secretary and its President at Northbrook, Illinois, and countersigned by an authorized representative.

Myron J. Resnick
Secretary

Archie R. Boe
President

Countersigned By ______________________, Authorized Representative

PRODUCER'S COP

Northbrook
Insurance Company
Northbrook, Illinois

# Endorsement

Named Insured: UNIGARD MUTUAL INSURANCE COMPANY Policy No.: 63-300-091
IRO OCCIDENTAL PETROLEUM CORP. Endorsement No.: ORO

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $4,049.00, IT IS UNDERSTOOD AND AGREED THAT THE DEPOSIT PREMIUM AS SHOWN IN ITEM 6 OF THE DECLARATIONS, REINSURANCE PREMIUM COMPUTATION, IS AMENDED TO READ $34,984.00

This endorsement to take effect on the 1ST day of MARCH 19 75. All other terms and conditions remain unchanged.

Agency at SAN FRANCISCO, CALIFORNIA

Countersigned: APRIL 14, 1975

Agent

RL. PRINTED IN U.S.A.

# Conditions

**Northbrook Insurance Company** (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

I. **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III. **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment aginst the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII. **Cancellation:** This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condtion of cancellation.

VIII. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Myron J. Resnick
Secretary

Archie R. Boe
President

# Nuclear Energy Liability Exclusion Endorsement

This policy shall not apply: BROAD FORM

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(c) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element of fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or ultilizing spent fuel, or (3) handling, processing or packaging waste.

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

# War Risk Exclusion Endorsement

This policy shall not apply to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requistion or destruction of or damage to property by or under the order of any government or public or local authority.